Thank you, Your Honor. The BIA denied the petitioner's request for a motion to remand and stated that in order for a motion to be granted, the petitioner must demonstrate prima facie eligibility for the relief he seeks. The BIA stated that the first and the principal reason why the petitioner has not met his burden was that he was not admitted or inspected when he entered the United States. This, the BIA stated, was an element necessary in order for him to adjust his status. This is unequivocal under 245A of the Immigration Act. You have to have a legal entry. And the respondent in their brief devoted a couple of pages also arguing that Navarrete did not have a legal entry. And they keep citing that he only had TPS. And under Sanchez v. Mayaguez, that doesn't do it anymore. Yeah, that's only a legal status that is not an admission. Well, we argue that the BIA was factually wrong in their contention that Navarrete did not make a legal entry. He was, in fact, admitted and inspected in the United States. Well, let's assume you're right about that. What about the issue of the Form 130, the I-130? Yeah, the I-130, that's the second reason why the BIA stated that he was prima facie ineligible. We can argue that under 8 U.S.C. 1229 small a, small c in parentheses, number 7 in parentheses, and capital B in parentheses under motions to reopen and removal proceedings, the motion to reopen shall state new facts that can be proven at a hearing to be held if the motion is granted and shall be supported by affidavits, new evidentiary materials sought to be introduced, and, if necessary, a completed application for relief. Here's our whole case, Your Honor. What we have here is a biological daughter who was not 21 when we were in the trial proceedings, but now when the case went to the BIA, she turned 21. Now, she's the biological daughter of the petitioner. The only reason that the service would deny an I-130 petition with a daughter who's 21 petitioning her father is if the father neglected to support her when she was growing up. When she was going through her formative years, I call these the wonder bread years. And here it is. On the record, the daughter testified extensively that her and her father had a special relationship. Let me ask you this just to pause you. The BIA said that your client had not provided evidence that the daughter had filed a form I-130. If that were true, is that a valid basis for denying this motion to remand? No, it isn't. It isn't because all of the evidence that makes it a prima facie eligibility is in the record. It's in the record. Are you saying it's irrelevant, then, whether the daughter filed or had an approved I-130? What I'm saying, Your Honor, is that under the Boesian, and I'll spell it, T-A-D-E-D-O-S-Y-A-N v. Holder, 745-3-1250, 9th Circuit. This was decided in 2014. It concluded that the BIA abused its discretion in denying the motion to reopen and explaining that the BIA does not require any conclusive showing that the relief has been established, but rather that the BIA is willing to reopen with the new facts alleged, when coupled with the facts already in the record, show that it would be worthwhile to develop issues further in a reopening hearing. That's what we contend, that there's substantial facts in the record proving the relationship between the U.S. citizen daughter and her father, who's the petitioner, and that we weren't given a chance to do that in the trial hearing because she wasn't 21. Well, Counsel, doesn't that application have to be filed and considered by the underlying court for us to determine whether or not they abuse our discretion in denying for that basis? The motion to reopen is what we have asked for in order to develop all of the facts in the case, looking at new facts as well as the facts in the record. So submitting a petition, it's our position that the BIA should have given us an opportunity to do that. Look, it was November of 2018. Let me pause you here. We asked for supplemental letter briefs on this issue, and your letter states that the I-130 was filed with the BIA. Is that true? Well, we misspoke on that, Your Honor, and I apologize. We did file the I-130. It was approved, and we did a motion to remand that was submitted to the BIA, but in further checking, there was a technical reason why they didn't receive it. I believe that it had to do with payment. When do you claim you filed it? We filed the BIA. It was done in April. The case, the I-130 was approved. I'm sorry, the I-130 was submitted to the service in February of 2020. The service approved the I-130 in April of 2020. Shortly thereafter, we filed for remand. And also, was that 2020 or 2021? Let me see. I think it has to be 2021. You're absolutely right, Your Honor. I apologize. The daughter, she wasn't 21, and we're not nearly part of 20. So what was the date on which you provided this information to the BIA? The date.  I know unequivocally it was before the BIA made a decision. If I remember correctly in your filing, you indicated that February 26, 2021 was the date that the daughter applied, that it had been approved, I believe you indicated May 3, 2021. So the question that Judge Brass is asking, did you submit it after that? Yes. The answer is we attempted to submit it after it, but it wasn't. It wasn't. It was rejected due to a filing fee problem. Okay, but then the BIA issues a decision that says you did not provide this evidence. I mean, at that point, if you believed you had filed it and it had been rejected, whether properly or not, you could have gone back to the BIA and said, well, this is actually inaccurate. Instead, we have a petition for review here, but no evidence of this filing. Right, and I understand that, Your Honor. And I'm still holding to the point that the cases that I cited, there was a reopening even though there was no evidence that petitions were filed. Okay, the board cited Coelho. Coelho can certainly be distinguished from the instant case. Coelho was an admitted drug trafficker and a user of drugs for many years. He files an I-212 in front of the judge, and they take testimony of what happened when the judge made a finding that he was unremorseful. And then after the judge made that decision, he came back and asked for a motion to remand in order to establish rehabilitation. Well, he missed his opportunity. We didn't miss our opportunity. The door was not 21 when this case was being heard in the trial. Let's let you have your time. We'll give you two minutes for rebuttal, and we'll hear from the Attorney General. Good morning, Your Honors. I'm Ethan Upton for the Respondent. I would like to respond to at least two of Closing Counsel's points. The first is that the regulations for a motion to reopen very specifically at ACFR 1003.2 state that a motion to reopen proceedings for the purpose of submitting an application for release must be accompanied by the appropriate application for release and all supporting documentation. Closing Counsel seems to be focusing more on facts as they currently stand or the situation or developments that have taken place since the motion to remand before the Board. The petition for review at this point before this Court is the abuse of discretion standard is what this Court should look at to review what was submitted before the Board at that time. And as Closing Counsel conceded, there was no application for adjustment of status, and there was, in fact, no I-130. There was some suggestion that maybe the BIA had rejected a filing. At least I haven't seen indication of that. Do you know if that's correct? I do not see any of that in the record either, Your Honor. And if that was the case, I would point Closing Counsel to a petition to file a motion to reconsider after the Board issued a decision. Because in that motion to reconsider, he could have pointed out any factual errors, and that would have been the time to challenge the fact that he had submitted an I-130 and it had been rejected. Your opposing counsel also seemed to argue that you don't actually need to provide either a filed or approved I-130. You could indicate prima facie eligibility. Is that correct? That's incorrect, Your Honor. As I mentioned, the very specific language in the regulation does say, I don't see the language if necessary. It says it should be. It says it must be accompanied. And, yes, although Closing Counsel says that if the Board looked at the record, they would have maybe seen that there was a birth certificate or something else suggesting the petitioner had a U.S. citizen child, but it's the approved I-130 that's conclusive of a relationship between a U.S. citizen and the applicant or beneficiary. It's not just a birth certificate in the file or petitioner's testimony in the file saying, I have a U.S. citizen child. And as the Court might recall, at that time when he filed the motion to reopen, the doctor hadn't had the approved I-130, so the record as it stood before the Board was that there was nothing conclusive to show that the petitioner did, in fact, have the U.S. citizen child. Now, Counsel, let's assume for a second that they do have that now, that they do have that. What are their options? So, Your Honor, in my opinion, the petitioner doesn't have very many options because under Sanchez v. Mayorkas, the TPS, this Court just says that a TPS grant does not cure any unlawful presence or doesn't cure an entry without inspection. A petitioner, just as the applicant in Sanchez v. Mayorkas, entered without inspection. So notwithstanding the fact that the opposing counsel does have a child. That's when he entered at the airport later, though. Well, so he entered through a parole document, but that parole is linked to the TPS, and that in the record is at page 59, which is the IJ's finding that that entry was linked, was a parole based on the TPS, which Sanchez v. Mayorkas very specifically says, does not count as an admission for purposes of adjustment of status. I would also point the Court's attention to the language in AUSC 1191A. The parole basically let him leave the United States under the TPS program for some, did he have to provide some reason, some family related reason, for example? Your Honor, unfortunately that's not in the record, so I can't say what was the basis for which he was granted that parole. But at 1182 D5A, which is the portion of the statute which speaks to parole, it says the Attorney General may accept as provided in subparagraph B, which doesn't apply, in his discretion, parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any non-citizen applying for admission to the United States. But such parole of such non-citizen shall not be regarded as an admission of the non-citizen. And when the purposes of such parole shall, in the opinion of the Attorney General, have been served, the non-citizen shall for the return or be returned to the custody from which he was paroled. And so under the very language of that statute, Judge Press, it would seem to say that that parole is a very temporary sort of benefit, but if it's linked to the TPS and it doesn't change petitioner status in any way. And so the fact that he entered without inspection and he may have left under this parole, which is linked specifically, as the IJ found on page 59 of the record, linked to TPS, which is not an admission under Sanchez v. Puerto Rico, that it's not able to cure his entry without inspection and he's not able to adjust under the statute called the TPS. So this is getting to Judge Mendoza's question. So your position is because the entry was unlawful, he's not going to be eligible for adjustment of status? Yes. So Judge Mendoza, there's another portion of the statute, 1251AI, I believe, which is a portion of the statute which would apply for non-citizens or applicants who entered without inspection. But in order for the petitioner to be eligible for that, he would have had to apply April 30, 2001, or he would have had to have had this approved, I-130, by April 30, 2001, and that's not the case. In 2001, a petitioner didn't have, his U.S. citizen daughter could not have filed an I-130 for him, so he can't get adjustment of status under that portion of the statute. There are some cases where petitioners are able to get a 601 waiver, and they apply to USCIS to waive any unlawful presence, and they apply for this waiver before they leave the country. And again, looking at the language of the 601 waiver, Mr. Navarro wouldn't be able to apply for that because you have to show extreme hardship to a United Citizen parent or spouse, and in his case, he happens to have a United Citizen daughter. So he can't show the hardship in that case, and he also, because he has a removal order, he would have to ask the agency to reopen it, to actually close his case in order to file the 601 waiver. So he does have some hurdles because of his entry without inspection. Both you and your opposing counsel refer to a completed and approved Form I-130, but I don't see that anywhere. That's the government's point in a nutshell. Judge Erickson, there is no approved I-130 in the record as it stands today. There was not an approved I-130 before the board at the time when Mr. Navarro applied for his motion to reopen. It was his burden to provide that proof. Without that, he's not able to show that he's prima facie eligible, and as opposing counsel just conceded today, he did not, in fact, when he applied for the motion to reopen at the board, he did not, in fact, have or submit one, and that's where he was saying he attempted to submit one, but there was some administrative error or something that prevented him from refiling or submitting that. In the supplemental briefing, again, this court asked the very question, and he wasn't able to point to a citation to the record where you would find an I-130, and that's because it's not in the record, and it was not before the agency, and so it's the government's position that there was no abuse of discretion, because at the time when Mr. Navarro filed or sought his motion to remand, he did not have this I-130, which would have been conclusive evidence of his relationship to a United citizen who would have been able to apply or on which he would have been able to seek assessment of status. And so he has that hurdle as well as the hurdle brought up by Sanchez versus Mayorko, which is he doesn't have an admission or he's not in a lawful status. If the court has no other questions, I would rest on the arguments in the respondent's brief. Thank you. Mr. Rossio. Yes, I'd like to point out two points. Number one, it's not conclusive that he came in under parole. If you look at the I-621 that was submitted by the government, they said that he came in as a visitor, so it's not conclusive, but even if he did come in under the parole, which we've done for many, many years under the Sanchez-Mayorkos, there's a deadline of when they stopped taking paroles as legal entries. And this he paroled in in 1994. That was way before Mayorkos, the Sanchez-Mayorkos case. So in essence, the government is incorrect in stating that he still doesn't have a legal entry. He absolutely has a legal entry, and he did it either with a visitor visa or under a parole, and he will always be eligible to adjust his status with that legal entry. So he's not barred from applying under that condition. Once again, yes, you know, there's no question that an application was not submitted properly to the board, although one was attempted to be submitted. But my contention is, as I said before, in the totality of the facts on the record, that prima facie eligibility has been met. Thank you for your argument. Mr. Ranzi and I thank both counsel for the briefing and argument. This matter is submitted.
judges: BRESS, MENDOZA, Ericksen